**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| **LUKE LAWSON**<br>615 Saint James Place<br>Trenton, OH 45067<br><br>Plaintiff,<br><br>v.<br><br>**ECHLER USA INC.**<br>6 South 2nd Street<br>Suite 713<br>Hamilton, OH 45011<br><br>***and***<br><br>**MARK ECHLER**<br>999 Fay Drive<br>Mary Esther, FL 32569<br><br>***and***<br><br>**DAVID CARR**<br>165 Richardson Place<br>Picayune, MS 39466<br><br>Defendants. | Case No.<br><br>Judge ______________________<br><br>**COMPLAINT WITH JURY DEMAND** |

Now comes Plaintiff Luke Lawson ("Plaintiff" or "Lawson"), and for his complaint against Defendants Echler USA Inc. ("Echler USA"), Mark Echler ("Echler"), and David Carr ("Carr"), (collectively, "Defendants") states the following:

**PARTIES**

1. Plaintiff Luke Lawson is a United States Citizen residing at 615 Saint James Place, Trenton, Ohio 45067.

2. Defendant Echler USA, Inc. is an Ohio corporation, with its principal place of business located at 6 South 2nd Street, Suite 713, Hamilton, Ohio 45011.

3. At all times relevant to this action, Echler USA is and has been an employer within the meaning of 38 U.S.C. § 4303(4)(A)(i) and O.R.C. § 4112.01(A)(2).

4. Defendant Mark Echler is the founder, President, CEO, director, and majority shareholder of Echler USA. Echler is a U.S. citizen and currently resides at 999 Fay Drive, Mary Esther, Florida 32569.

5. Defendant David Carr is the Chief Growth Officer of Echler USA, a shareholder, and chairman of the board of directors of Echler USA. Carr is a U.S. citizen and currently resides at 165 Richardson Road, Picayune, Mississippi 39466.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the statutes of the United States for violation of the Uniform Services Employment and Re-employment Rights Act, 38 U.S.C. § 4301, *et seq.* ("USERRA"), and related Ohio statutory and common law claims.

7. This Court has supplemental jurisdiction over Plaintiff's Ohio state law claims, as the claims are so related to the federal claims that they form part of the same case or controversy.

8. Defendants Echler USA, Mark Echler, and David Carr are subject to personal jurisdiction in the State of Ohio because they reside, transact business, and/or employ a significant number of employees within the State of Ohio. Additionally, the acts by Defendants giving rise to this action took place in Ohio.

9. Venue is proper in the Southern District of Ohio pursuant to 28 U.S.C. § 1391 because Defendants conduct business within the Southern District of Ohio, and a substantial part of the events or omissions giving rise to the claims occurred in the Southern District of Ohio.

**BACKGROUND AND FACTS APPLICABLE TO ALL CAUSES OF ACTION**

10. Plaintiff is an E-5 sergeant in the U.S. Army National Guard, and a covered servicemember under USERRA since his enlistment on April 18, 2018.

11. In 2015, Plaintiff met Defendant Mark Echler while serving as a volunteer in the Ohio Military Reserve, a separate, state-sanctioned military organization administered by the Ohio Adjutant General.

12. Echler and Lawson served in the Ohio Military Reserve together from 2015 through 2017.

13. Lawson was discharged from the Ohio Military Reserve on April 18, 2018, the same day he enlisted in the National Guard.

14. In or around June 2022, Plaintiff began working as a part-time security guard for Echler's security company, Echler USA, Inc.

15. Plaintiff was a loyal, conscientious, and hard-working Echler USA employee throughout his part-time employment at Echler USA.

16. In August 2023, Plaintiff parted on good terms with Echler USA in order to accept full-time employment with another employer.

17. In 2026, Plaintiff was employed full-time with Meritus Solutions Group in Dayton, Ohio, as a Lieutenant / Protective Security Officer, for which he earned an annual salary of $93,000, plus benefits and other compensation opportunities.

18. Echler was aware that Plaintiff was employed full-time with Meritus in Dayton.

19. On February 24, 2026, Echler contacted Plaintiff by phone for the purpose of soliciting him to leave his employment with Meritus, and become employed with Echler USA as the company's Chief Operating Officer ("COO").

20. Echler desired to hire Plaintiff to fill the COO role.

21. Unbeknownst to Plaintiff, at the time the COO role was held by another employee of Echler, Philip Setty.

22. Plaintiff and Echler spoke throughout the day regarding details of the position and job offer.

23. Plaintiff ultimately declined the offer, as he was satisfied in his current employment at Meritus.

24. The next morning (February 25, 2026), Plaintiff sent a "COO Proposal" to Echler to work on a part-time consulting basis for Echler USA, which would allow Plaintiff to assist Echler USA while keeping Plaintiff's current full-time employment with Meritus.

25. After receiving the proposal, Echler and Carr called Plaintiff in response, declining the part-time proposal and informing Plaintiff that the COO role requires full-time employment.

26. During this call, Echler and Carr also expressed that Plaintiff would be made "a part of the company" by providing him shares and a seat on the board of directors.

27. Echler and Carr also stated to Plaintiff that Plaintiff would be Echler USA's "number 2 man."

28. After considering the offer again, Plaintiff informed Echler and Carr that he appreciated the offer, but could not leave his current full-time employment.

29. Despite the denial, Echler and Carr's efforts to induce Plaintiff to leave his employment at Meritus continued.

30. That evening, Echler sent Plaintiff a text stating, stating, "Hey Dave and I would like to have a zoom call with you and your wife if your[sic] interested so we can give you a better understanding of the company and what we have going on. Let me know if you'd be interested, thanks!"

31. Plaintiff accepted the invitation for a zoom conference for the following day, February 26, 2026.

32. During the Zoom call, Echler and Carr both represented to Plaintiff and his wife that Echler USA was in a strong financial position, had healthy sales projections, was expected to grow from $2.5 million to $4 million in new sales within the year, and other financial information indicating that Echler was a financially viable company that was growing.

33. This financial information was conveyed in a PowerPoint presentation to Plaintiff and his wife during the Zoom call, although a copy of the presentation has not been provided to Plaintiff.

34. Beyond the financial information, Echler and Carr represented to Plaintiff that Plaintiff would be employed long-term as the COO, would be able to use the experience of a COO of a security company on his resume, and that Defendants would provide him 10 shares of common stock in Echler USA along with a seat on the board of directors.

35. During the same Zoom call, Plaintiff informed Echler and Carr that he was under orders from the U.S. Army National Guard to attend Basic Leaders Course (BLC) from May 26, 2026, through June 17, 2026.

36. In response and as a further effort to induce Plaintiff, Echler and Carr assured Plaintiff that he would be provided job-protected, paid-leave for this absence.

37. Following the February 26, 2026 Zoom call, Echler and Carr sent Plaintiff a written offer letter for the position of COO, which included an annual salary of $101,000, an annual performance bonus, fifteen (15) days of paid time off per calendar year, and a stated intention to provide Plaintiff ten (10) shares of Echler USA common stock. A true and correct copy of the offer letter is attached as **Exhibit 1** (emphasis added).

38. All of the statements, offers, and assurances, both during the calls with Echler and Carr, and those statements made in the offer letter, were made with the intention to induce Plaintiff to leave his current secure employment with Meritus in Dayton and to accept full-time employment with Echler USA in Hamilton, Ohio.

39. Relying upon Echler and Carr's representations, Plaintiff resigned from his position at Meritus, executed the February 27, 2026 offer letter, and began employment with Echler USA on March 16, 2026 as the company's COO.

40. In accepting the new employment, Plaintiff also placed his home in Dayton, Ohio on the market, and purchased a new home closer to Echler USA.

41. Within Plaintiff's first week of employment, Echler USA's board of directors approved ten shares of common stock to Plaintiff and added Plaintiff as a director.

42. The 10 shares of common stock in Echler USA are securities as defined under O.R.C. § 1707.01 and 15 U.S.C. §77b.

43. Prior to offering or approving the shares of Echler USA to Plaintiff, Echler and Carr never provided Plaintiff with any financial records of Echler USA.

44. Echler and Carr also failed to provide corporate governance documents associated with Echler USA, including any shareholder agreements, buy-sell agreements, code of regulations, corporate bylaws, board meeting minutes, or resolutions.

45. Defendants also omitted the reality of Echler USA's financial projections, including its assets and liabilities, its profits and losses, and its current value.

46. During his tenure as COO, Plaintiff performed well in the role, including reducing overtime hours across the company, consolidating processes, and developing reports for supervisors that had not been tracked prior to Plaintiff taking on the role.

47. Plaintiff also increased hiring and retention across the company and dealt with performance issues of subordinates in an appropriate and efficient manner.

48. Plaintiff received no negative reviews or other disciplinary action and was informed repeatedly that he was performing well.

49. On repeated occasions during his employment, Plaintiff requested financial records of Echler USA, for purposes of performing his job as COO and in his capacity as a shareholder of the company.

50. Those requests were refused or otherwise ignored, and to date Plaintiff still has not been provided with Echler USA's financial books and records.

51. On May 19, 2026, Plaintiff sent an email to Echler and Carr reminding both of his upcoming military leave obligations and offered to meet ahead of time to discuss coverage during his absence.

52. Less than an hour later, Echler and Carr called Plaintiff and terminated his employment.

53. Echler primarily spoke during the call, and stated that the company was "going in a different direction."

54. Following the call, Echler sent Plaintiff a document titled, "Separation, Severance, Release, and Resignation Agreement," offering Plaintiff $5,000 for a release of claims against Echler USA, and an offer of $5,000 from David Carr to purchase Plaintiff's 10 shares of common stock in Echler USA.

55. At the time these agreements were presented, Plaintiff still had not received the books and records of Echler USA, nor had he received any shareholder buy-sell or other agreements pertaining to his equity stake in Echler USA, Inc.

56. Plaintiff did not sign the proposed agreements.

57. On July 13, 2026, Plaintiff submitted to Echler a demand for inspection of Echler USA's corporate records pursuant to O.R.C. § 1701.37. A true and correct copy of the demand for inspection is attached as **Exhibit 2**.

58. As stated on the face of the demand, Plaintiff's specific and proper purpose for seeking inspection was to evaluate the financial condition and management of Echler USA in connection with a potential valuation of Plaintiff's shares, and to investigate potential breaches of fiduciary duty by Echler USA's officers and directors.

59. Plaintiff delivered the demand by certified mail to 6 South Second Street, Suite 713, 6 South Second Street, Suite 713, Hamilton, Ohio 45011.

60. Echler USA received the demand for inspection.

61. Despite acknowledging receipt of the request Echler USA has not made the requested corporate records available to Plaintiff for examination or copying.

## COUNT I: DISCRIMINATION AND INTERFERENCE WITH USERRA RIGHTS
**Against Echler USA, Echler, and Carr**

62. Plaintiff restates each and every allegation set forth above as if fully rewritten herein.

63. Plaintiff is a covered service member under USERRA.

64. Plaintiff put Defendants Echler USA, Echler, and Carr on notice of his need for military-related leave prior to his hiring.

65. Plaintiff also reminded Defendants of his military obligations in an e-mail on May 19, 2026.

66. Within an hour of this e-mail, Defendants terminated Plaintiff's employment.

67. In terminating Plaintiff's employment, Defendants interfered with Plaintiff's USERRA rights, including the right to job-protected leave and re-employment upon the return from such leave.

68. Defendants also retaliated against Plaintiff for attempting to exercise his rights to take job-protected leave under USERRA.

69. Plaintiff's service member status and protected activity were at least a motivating factor in the adverse employment action taken by Defendants.

70. Defendants' stated reason for the adverse action, that the company was "going in a different direction," is a pretext for discrimination and interference with Plaintiff's rights under USERRA, and in retaliation for Plaintiff's attempted exercise of such rights.

71. Because Echler and Carr acted directly or indirectly in the interests of Echler USA in terminating Plaintiff, and because both are shareholders and officers of Echler USA with authority to act on Echler USA's behalf, both Defendants are considered "employers" under USERRA and subject to liability.

72. In committing the above-referenced acts, Defendants knowingly failed to comply with USERRA, subjecting Defendants to claims for liquidated damages under 38 U.S.C. § 4323(d)(1)(D) in the amount of $50,000.00 or in an equal amount to Plaintiff's back pay, whichever is greater.

**COUNT II: PROMISSORY ESTOPPEL**
**Against Echler USA, Echler, and Carr**

73. Plaintiff restates each and every allegation set forth above as if fully rewritten herein.

74. As part of his offer of employment with Echler USA, Plaintiff was promised and granted ten (10) shares of common stock in Echler USA, named as a Director of Echler USA, and made the Company's Chief Operating Officer (COO).

75. In addition, Plaintiff was promised fifteen (15) days of paid time off along with additional paid leave for his military obligations.

76. As a shareholder-employee of Echler USA, a close corporation, Plaintiff reasonably understood that he could not be terminated without a legitimate business purpose.

77. Echler, Carr, and Echler USA made representations to Plaintiff that the stock options were a valuable component of his compensation package and that his position as a shareholder-employee provided job security beyond that of an ordinary at-will employee.

78. Echler, Carr, and Echler USA should have reasonably expected that their promises would induce Plaintiff to leave his secure, well-compensated position, move himself and his family in order to accept employment with Echler USA.

79. In reliance on these promises and representations, Plaintiff resigned from his position at Meritus Solutions Group, accepted employment with Echler USA, sold his home, and purchased a new home closer to Hamilton, Ohio.

80. Plaintiff's reliance on the promise of equity ownership and the understanding that shareholder-employees of close corporations are not terminable at will was reasonable and foreseeable.

81. Plaintiff was injured by his reliance, when he was terminated by Defendants just two months after he accepted employment, without any legitimate business purpose.

82. As a direct and proximate result of Defendants' actions giving rise to promissory estoppel, Plaintiff has suffered significant monetary damages, including lost salary, bonuses, lost financial opportunities, reliance and/or expectation damages, and restitutionary damages.

**COUNT III: BREACH OF FIDUCIARY DUTY**
**Against Echler and Carr**

83. Plaintiff restates each and every allegation set forth above as if fully rewritten herein.

84. Ohio law imposes a heightened fiduciary duty between shareholders in a close corporation, similar to the duty partners owe to one another in a partnership and characterized as a duty of the "utmost good faith and loyalty."

85. As shareholders of Echler USA, Inc., Echler and Carr owed Plaintiff such a fiduciary duty.

86. Echler and Carr breached this fiduciary duty in multiple ways, including (a) by terminating Plaintiff's employment without a legitimate business purpose; (b) inducing Plaintiff to leave his secure employment at Meritus in favor of accepting employment at Echler USA; (c) conveying shares of Echler USA to Plaintiff while concealing or otherwise omitting material facts related to the transaction; (d) attempting to exclude Plaintiff from the profits and opportunities at Echler USA, including attempting to re-purchase his shares without providing him an opportunity to obtain an accurate valuation of such shares; (e) terminating Plaintiff's

employment in violation of statutory laws including USERRA and related Ohio laws; and (f) refusing to provide Plaintiff an opportunity to inspect and copy the complete books and records of Echler USA.

87. As a direct and proximate result of Echler's breach of fiduciary duty, Plaintiff has suffered significant monetary damages, including lost salary, bonuses, lost financial opportunities, reliance and/or expectation damages, and restitutionary damages.

88. Plaintiff's injuries are unique to himself and not shared by Echler, Carr, or any other shareholder of Echler USA.

**COUNT IV: FRAUDULENT INDUCEMENT**
**Against Echler USA, Echler, and Carr**

89. Plaintiff restates each and every claim set forth above as if fully rewritten herein.

90. As Echler USA's founder and CEO, Echler was in a position of superior knowledge with respect to Echler USA, including the company's financial outlook, its annual revenue streams, and its stock valuation.

91. As Echler USA's Chief Growth Officer and Chairman of the Board, Carr was likewise in a position of superior knowledge with respect to Echler USA, including the company's financial outlook, its annual revenue streams, and its stock valuation.

92. Echler and Carr made fraudulent statements to Plaintiff with respect to the financial outlook and position of Echler USA, the value of the company, and what was being offered to Plaintiff for purposes of compensation and employment.

93. This includes, but is not limited to, representations that Echler USA had recorded $2.5 million in sales and was expected to grow to $4 million in sales by year-end, and other financial information presented to Plaintiff during the Zoom call in February 2026.

94. To his detriment, Plaintiff relied on Defendants' material representations with respect to Echler USA, including its positive financial outlook, growth trajectory, and valuation.

95. This reliance was reasonable, given Echler and Carr's positions with the company, their knowledge with respect to the company, and the lack of opportunity by Plaintiff to obtain information regarding Echler USA's financial position and the company's current sales revenues prior to becoming employed.

96. Had Plaintiff known that Defendants' representations were false, he would not have left his position with Meritus Solutions Group and accepted employment with Echler USA.

97. As a direct and proximate result of Defendants' fraudulent actions, Plaintiff has suffered significant monetary damages, including lost salary, bonuses, lost financial opportunities, reliance and/or expectation damages, and restitutionary damages.

98. Additionally, because Defendants' actions demonstrate malice and/or aggravated or egregious fraud, Plaintiff is entitled to an award of punitive damages, and reimbursement of his costs, including but not limited to his reasonable attorney's fees.

## COUNT V: FRAUDULENT MISREPRESENTATION

**Against Echler USA, Echler, and Carr**

99. Plaintiff restates each and every claim set forth above as if fully rewritten herein.

100. As Echler USA's founder and CEO, Echler was in a position of superior knowledge with respect to Echler USA, including the company's financial outlook, its annual revenue streams, and its stock valuation.

101. As Echler USA's founder and CEO, Echler knowingly and intentionally misrepresented Echler USA's financial outlook, its annual revenue streams, and its stock valuation, or in the alternative did so with reckless disregard to the truth of such representations.

102. Relying on these misrepresentations, Plaintiff resigned from his position with Meritus Solutions Group.

103. This reliance was reasonable, given Echler's position as the Echler USA's founder and CEO, his superior knowledge with respect to the company, and the lack of opportunity by Plaintiff to obtain information regarding Echler USA's financial position and the company's current sales revenues prior to becoming employed.

104. Had Plaintiff known that Defendants' representations on which he relied were false, he would not have left his position at Meritus Solutions Group.

105. As a direct and proximate result of Defendants' fraudulent misrepresentations, Plaintiff has suffered significant monetary damages, including lost salary, bonuses, lost financial opportunities, reliance and/or expectation damages, and restitutionary damages.

106. Additionally, because Echler's and Echler USA's actions demonstrate malice and/or aggravated or egregious fraud, Plaintiff is entitled to an award of punitive damages, and reimbursement of his costs, including but not limited to his reasonable attorney's fees.

**COUNT VI: NEGLIGENT MISREPRESENTATION (in the alternative)**
**Against Echler USA, Echler, and Carr**

107. Plaintiff restates each and every claim set forth above as if fully rewritten herein.

108. Echler USA, Echler, and Carr made misrepresentations of material fact with respect to Echler USA, including those referenced above.

109. Those representations were false.

110. Defendants were at least negligent in making the statements and should have known that the representations were false.

111. In making the false representations to Plaintiff, Defendants intended to induce Plaintiff into relying on those representations in leaving his employment at Meritus Solutions Group and becoming employed at Echler USA.

112. As a direct and proximate result of Defendants' false representations, Plaintiff has suffered significant monetary damages, including lost salary, bonuses, lost financial opportunities, reliance and/or expectation damages, and restitutionary damages.

113. Additionally, because Defendants' actions demonstrate malice and/or aggravated or egregious fraud, Plaintiff is entitled to an award of punitive damages, and reimbursement of his costs, including but not limited to his reasonable attorney's fees.

## COUNT VII – FAILURE TO PERMIT SHAREHOLDER INSPECTION OF CORPORATE RECORDS

**Against Echler USA, Echler, and Carr**

114. Plaintiff restates each and every claim set forth above as if fully rewritten herein.

115. O.R.C. § 1701.37 requires a corporation to keep correct and complete books and records of account, minutes of proceedings, and shareholder records.

116. Under O.R.C. § 1701.37, a shareholder who makes a written demand stating a specific purpose may examine the corporation's articles, regulations, books and records of account, minutes, shareholder records, and voting-trust agreements at a reasonable time and for a reasonable and proper purpose and may make copies or extracts of those records.

117. Plaintiff was a minority shareholder of Echler USA when he made his written inspection demand and remains a shareholder of Echler USA to this day.

118. Plaintiff's demand identified a specific and proper purpose for the requested inspection, to evaluate the financial condition and management of Echler USA in connection with a potential valuation of Plaintiff's shares and to investigate potential breaches of fiduciary duty by Echler USA's officers and directors.

119. Plaintiff requested examination of corporate records to which he is entitled as a shareholder, including the records identified in his letter.

120. Echler USA failed and refused to make the requested corporate records available to Plaintiff within five days after Plaintiff's written request and has continued to withhold those records.

121. Under O.R.C. 1701.94, Echler USA is therefore subject to the statutory forfeiture of $100, plus $10 for each day its failure continues beginning on the fifth day after Plaintiff's written request.

122. Under O.R.C. 1701.94, Plaintiff's right to recover the statutory forfeiture is in addition to all other remedies.

**COUNT VIII: FEDERAL SECURITIES LAW VIOLATIONS**
**Against Echler USA, Echler, and Carr**

123. Plaintiff restates each and every claim set forth above as if fully rewritten herein.

124. Defendants Echler, Carr, and Echler USA violated federal securities laws in connection with the actions discussed herein.

125. 15 U.S.C. §78j(b), as well as Rule 10b-5, 17 C.F.R. § 240.10b-5, prohibits any person from making any untrue statement of material fact, or from omitting certain material facts, in connection with the purchase or sale of any security.

126. As set forth above, Defendants provided Plaintiff with information that materially misrepresented or omitted the financial status of Echler USA.

127. Defendants used means of interstate commerce to make these statements and/or omissions to Plaintiff.

128. For example, Defendants misrepresented that Echler USA had made $2.5 million in sales and was projected to increase to $4 million in sales by the end of 2026.

129. Defendants also misrepresented that the 10 shares of Echler USA being offered to Plaintiff had value.

130. Because the 10 shares of Echler USA are stocks of Echler USA issued by the company, they are considered "securities" as defined by 15 U.C.S. § 77b(a)(1).

131. Defendants also omitted other material facts, including Echler's current profits and losses, and actual financial projections.

132. Plaintiff justifiably relied on these false representations and/or omissions when deciding to resign from his employment and accept employment with Echler USA, along with the 10 shares of common stock.

133. Had Plaintiff known that the shares being offered to him had little or no value, he would not have accepted the shares, nor would he have accepted employment at Echler USA.

134. Plaintiff is a purchaser of securities and Defendants are sellers of securities.

135. Defendants not only held title in the security before it passed to Plaintiff, but they also played a substantial role in persuading Plaintiff to buy the security via his resignation of employment and acceptance of the COO role at Echler USA.

136. Defendants' misrepresentations proximately caused Plaintiff's injuries and loss because Plaintiff would not have resigned from his secure employment and invested in Echler USA but for these misrepresentations.

**PRAYER FOR RELIEF:**

WHEREFORE, Plaintiff Luke Lawson prays for judgment against Defendants Echler USA Inc., Mark Echler, and David Carr, as follows:

A. As to Count I, an award of lost wages and benefits, reinstatement or front pay in lieu thereof, attorney's fees and expenses, and liquidated damages as specified in 38 U.S.C. § 4323(d)(4).

B. As to Count II, an award of reliance and consequential damages in an amount to be determined by the Court;

C. As to Counts III-VI, an award of compensatory damages in an amount to be determined by the Court and punitive damages together with reasonable attorneys' fees and expenses;

D. As to Count VI, injunctive relief requiring Echler USA promptly to make available for Plaintiff's examination and copying all corporate records requested in Plaintiff's written demand that are within Echler USA's possession, custody, or control;

E. As to Count VII, the statutory forfeiture of $100, plus $10 for each day of continued noncompliance beginning on the fifth day after Plaintiff's written request, as prescribed in O.R.C. § 1701.94;

F. As to Count VIII, an award of reliance and consequential damages in an amount to be determined by the Court; and

G. All other legal or equitable relief that the Court deems warranted, including damages, punitive damages, prejudgment and post-judgment interest, and attorney's fees and costs of this action.

Respectfully submitted,

*/s/ Joshua M. Smith, Esq.*
Joshua M. Smith (0092360)
Peter A. Saba (0055535)
SSP Law Co., L.P.A.
2623 Erie Avenue
Cincinnati, Ohio 45208
(513) 533-6715
(513) 533-2711 – fax
jms@sspfirm.com
***Attorneys for Plaintiff***

**JURY DEMAND**

Plaintiff demands a jury on all issues triable to a jury.

Respectfully submitted,

*/s/ Joshua M. Smith, Esq.*
Joshua M. Smith (0092360)

# EXHIBIT 1

## Employment Offer – Chief Operating Officer (COO)

Dear Mr. Lawson,

Echler USA Inc. is pleased to formally extend this offer of employment to Luke Lawson for the position of Chief Operating Officer (COO), reporting directly to the Chief Executive Officer.

This letter sets forth the terms and conditions of your employment:

1. Position & Responsibilities

You will serve as Chief Operating Officer of Echler USA Inc., overseeing operational strategy, execution, performance management, personnel oversight, compliance, and subsidiary coordination in alignment with corporate governance standards.

You agree to devote your full professional time and attention to the business of the Company and to faithfully perform all duties customarily associated with the COO role, as well as such additional responsibilities as may be assigned by the CEO or Board of Directors.

As an executive officer, you will be subject to fiduciary duties, the Company's bylaws, corporate governance structure, SOPs, and all applicable policies.

2. Compensation

Base Salary:
You will receive an annual base salary of $101,000, payable in accordance with the Company's standard payroll schedule and subject to all required withholdings and deductions.

**Performance Bonus:**
You will be eligible to receive a discretionary annual performance bonus. The amount, if any, will be determined based on your individual performance, overall Company performance, and the achievement of specific performance metrics established by the CEO and/or the Board of Directors.

Performance metrics may include, but are not limited to:

- Maintaining overtime at or below **2% of total scheduled labor hours** during the applicable measurement period.
- Maintaining missed or unfilled shifts at **less than 2% of total scheduled shifts** during the applicable measurement period.

- Achieving measurable **payroll cost savings**, including but not limited to effectively staffing positions at sustainable and market-appropriate wage rates that reduce overall labor expense without negatively impacting service quality, compliance, retention, or operational performance.
- Meeting or exceeding revenue, profitability, operational efficiency, client retention, compliance, and other key performance indicators established by the CEO and/or Board.

Payroll cost savings will be evaluated based on documented reductions in labor expense relative to approved budgets, historical averages, contract bill rates, or other benchmarks established by the CEO and/or Board. Any cost-saving measures must comply with Company policy, applicable law, contractual obligations, and quality standards. Cost reductions that materially increase turnover, legal exposure, service failures, or operational risk may be excluded from consideration.

All performance metrics will be measured in accordance with Company records and internal reporting.

3. Paid Time Off (PTO)

You will receive three (3) weeks (15 business days) of paid time off per calendar year, accrued and administered in accordance with Company policy. PTO scheduling is subject to operational needs and CEO approval.

4. Equity Grant

Subject to Board approval, you will be granted ten (10) shares of common stock of Echler USA Inc.

This equity grant will be:

- Subject to the Company's existing shareholder agreements and governance documents.
- Subject to any transfer restrictions, buy-back rights, and corporate control provisions. contained in the Company's bylaws and shareholder agreements.

5. Confidentiality & Restrictive Covenants

As a condition of employment, you will be required to execute:

- Confidentiality and Non-Disclosure Agreement
- Non-Compete and Non-Solicitation Agreement
- Conflict of Interest Acknowledgment
- Executive Compliance & Governance Acknowledgment

You agree to maintain strict confidentiality of all proprietary, operational, financial, and strategic information.

6. Effective Date

Your employment will commence on March 16, 2026, unless otherwise mutually agreed in writing.

If these terms are acceptable, please sign below and return this letter. We look forward to your leadership and contribution to the continued growth and operational strength of Echler USA Inc.

Sincerely,

Mark Echler
Chief Executive Officer
Echler USA Inc.

Accepted and Agreed:

______________________________
Luke Lawson

Date: 2/27/26________________

Mark Echler CEO 2/28/2026

# EXHIBIT 2

July 13, 2026

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED**
Mark Echler
Echler USA Inc.
6 South Second Street, Suite 713
Hamilton, Ohio 45011-2868

**Re: Demand for Inspection of Corporate Records Pursuant to Ohio Revised Code § 1701.37**

Dear Mr. Echler,

I am a shareholder of record of Echler USA, Inc., an Ohio corporation (the "Corporation"), holding 10 units of Echler USA, Inc. common stock as of the date of this letter. Pursuant to Ohio Revised Code § 1701.37, I hereby make written demand, under oath, to inspect and, at my expense, to make copies or extracts of the following books and records of the Corporation:

1. The Corporation's articles of incorporation and code of regulations, and all amendments thereto;
2. The records of its shareholders, showing the names and addresses of all shareholders, the number, class, and series of shares held by each;
3. The books and records of account of the Corporation for the period from January 1, 2026 to June 30, 2026;
4. The minutes of the proceedings of its shareholders, directors, and committees of directors for the period from January 1, 2026 through June 30, 2026; and
5. All shareholder agreements, governance documents, and corporate by-laws.

The purpose of this demand is to evaluate the financial condition and management of the Corporation in connection with a potential valuation of my shares, and to investigate potential breaches of fiduciary duty by the Corporation's officers and directors. This purpose is reasonably related to my interest as a shareholder of the Corporation.

I request that these records be made available for inspection and copying at the Corporation's principal place of business, or another mutually convenient location, during regular business hours, within a reasonable time and in no event later than 14 business days from the date of this letter, as required under Ohio Revised Code § 1701.37.

Please be advised that Ohio Revised Code § 1701.37 imposes penalties on any officer or agent of the Corporation who, without reasonable cause, refuses to allow a shareholder to inspect and copy the records described above. If the Corporation fails or refuses to comply with this demand within the time specified, I will pursue all remedies available to me under Ohio law,

including seeking an order from a court of competent jurisdiction compelling inspection and an award of reasonable costs, including attorney's fees, as provided by statute.

Please direct your response and any questions regarding this demand to me at the address, phone number, or email listed above.

Thank you for your prompt attention to this matter.

Sincerely,

DocuSigned by:
7F128ED1EDBB425...

Luke Lawson